IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 23-cv-00062-CNS-SKC

EMPOWER ANNUITY INSURANCE COMPANY OF AMERICA, a Colorado corporation,

    Plaintiff,

v.

EMPOWER FINANCE, INC.,

    Defendant.

## ORDER

Before the Court is Plaintiff Empower Annuity Insurance Company of America's Motion for Preliminary Injunction (ECF No. 40). Plaintiff seeks an order enjoining Defendant from (1) advertising with the EMPOWER name on social media; (2) using the EMPOWER name in connection with the release of the "Empower Thrive" line of credit; and (3) using the EMPOWER name on withdrawals from consumer bank accounts (ECF No. 40 at 1). Because Plaintiff has failed to establish that without a preliminary injunction it will face irreparable harm, the Motion for Preliminary Injunction (ECF No. 40) is DENIED.

### I. BACKGROUND

Empower Annuity Insurance Company of America ("Plaintiff") asserts underlying federal trademark infringement and federal unfair competition claims, common law trademark infringement and unfair competition claims under Colorado law, and a deceptive business practices

1

claim under Colorado law (ECF No. 1 at ¶ 1). Plaintiff has been operating under the name EMPOWER since at least 2014 (ECF No. 1 at ¶ 36). Plaintiff is a financial services company that owns various federal registrations incorporating the term EMPOWER, a Colorado State trademark registration for EMPOWER, and various common law trademark rights in EMPOWER and EMPOWER marks (ECF No. 40 at 28-9).[1] Plaintiff also has a mobile application where customers can manage their accounts, including retirement plans, investment accounts, and health savings accounts (ECF No. 40 at 13). In the application, consumers can see account balances and set financial goals (ECF No. 40-1 at 8). In 2020, Plaintiff launched a national television advertising campaign. To date, Plaintiff has invested over $160 million in advertising on television and social media, among other means (ECF No. 40 at 12).

Empower Finance Inc. ("Defendant") is also a financial services company. In May 2017, Defendant launched a mobile application and distributed it on Google Play and Apple (ECF No. 61 at 35). In July 2019, Defendant applied for trademark registrations for logo designs, one of which included the word EMPOWER (ECF No. 61 at 18). Because Plaintiff opposed this registration, after negotiations, the parties entered a coexistence agreement wherein both parties agreed to stop using the logo colors of the other (ECF No. 40-26). In 2020, Defendant announced a cash advance feature on its mobile application for $8 a month after a free trial period (ECF No. 61 at 48). And from 2021 to 2023, Defendant tested a feature to facilitate subscriber lines of credit (ECF No. 61 at 48). In 2022, Defendant's mobile application had over 1.3 million subscribers (ECF No. 61 at 48). Since 2016, Defendant has spent over $15 million on advertising on the

---

[1] U.S. Reg. Nos. 5407837, 5256647, 5743480, 6216958, 6064550, 6043302, 6064551, 6053841, 6053897, and 6053898.

2

Facebook Meta platform and $7.8 million on television advertising (ECF No. 61 at 48). In total, Defendant has invested $45 million in marketing (ECF No. 61 at 48).

The central issue underlying Plaintiff's motion is 218 communications it received from May 16 to June 28, 2023, from consumers (ECF No. 40 at 3) that ultimately caused Plaintiff to implement "a new process" to track and address these communications (ECF 40-6 at 4). Plaintiff alleges that over 58 of these communications were from consumers who believed Plaintiff, instead of Defendant, had been withdrawing $8 from their bank accounts monthly and that at least 12 of these consumers said the withdrawals appeared under the EMPOWER name on their bank statements (ECF No. 40 at 3).

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." *U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888 (10th Cir. 1989). To prevail on a preliminary injunction motion, the movant bears the burden of showing that: (1) they are likely to succeed on the merits; (2) they will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs the injury the injunction would cause the opposing party; and (4) the injunction would not adversely affect the public interest. *See Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (citation omitted). "An injunction can issue only if each factor is established." *Denver Homeless Out Loud v. Denver, Colorado*, 32 F.4th 1259, 1277 (10th Cir. 2022) (citation omitted). "To constitute irreparable harm, an injury must be certain, great, actual, and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Irreparable harm is more than merely serious or substantial harm. *Id.* "[T]he party seeking injunctive relief must show that the injury complained

3

of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* Preliminary injunctions changing the status quo, such as the one requested here, are "disfavored," and in these instances, the moving party's burden of establishing that they are likely to succeed on the merits is heightened. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019) (quotation omitted).

### III. ANALYSIS

Having considered Plaintiff's Motion for Preliminary Injunction, the related briefing, and relevant legal authority, the Court denies the Motion. Plaintiff has failed to show that it will suffer future irreparable harm if a preliminary injunction is not issued.

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005). Indeed, "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017). To establish probable irreparable harm, the movant "must demonstrate a significant risk that [it] will experience harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016). "[P]urely speculative harm does not amount to irreparable injury," but "a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). Demonstrating irreparable harm is "not an easy burden to fulfill." *Id.*

Here, Plaintiff contends that it has experienced "a loss of control over its reputation and goodwill" because of, among other things, 218 calls over six weeks from consumers who were, on the majority, "upset, angry, confused and frustrated" with Defendant's cash advance mobile application function (ECF No. 40 at 19). Some of these calls "approach or exceed[ed]" 15 minutes in length (ECF 40 at 19). Plaintiff explains that it cannot resolve the consumers' issues which, in turn, causes a loss of control over its reputation (ECF 40 at 19). It also contends it has diverted "significant resources" to address these instances of confusion (ECF No. 40 at 19).

Plaintiff has not offered any evidence that it has lost any business, revenue, or that it faces a significant risk of losing business or revenue because of the increased communications. Nor has Plaintiff pointed to evidence from Plaintiff's customers or potential customers that no longer wish to use Plaintiff's services because of their confusion. Instead, Plaintiff states only that the customers who communicate feel confused and are seeking more information about Defendant.

Such evidence, or lack of evidence, is insufficient to establish the loss of business so significant to constitute irreparable harm. *See, e.g., DTC Energy Grp., Inc.*, 912 F.3d at 1272 (finding plaintiff failed to demonstrate irreparable harm where "both the prior loss of [plaintiff's] customers and consultants and the general decline of [plaintiff's] value as a business can be quantified in money damages"); *Farm Bureau Prop. & Cas. Ins. Co. v. Biggs*, No. 2:20-CV-2558-HLT-KGG, 2021 WL 1348317, at *5-6 (D. Kan. Feb. 25, 2021) (finding the plaintiffs failed to demonstrate irreparable harm based upon "loss of customers and goodwill" where plaintiff "submitted evidence pertaining to only fourteen of [p]laintiffs' customers that [d]efendants allegedly solicited" and "only seven canceled their business with [p]laintiffs" (emphasis in original)).

5

Plaintiff also fails to demonstrate a "significant risk" that it will face future harm "that cannot be compensated after the fact by money damages." *See DTC Energy Grp., Inc.*, 912 F.3d at 1270. In fact, Plaintiff points to a specific period for six weeks in 2023 during the NBA playoffs where Defendant launched a new social media campaign (ECF No. 40 at 3). This campaign, Plaintiff contends, "almost instantly" caused the increase in phone calls (ECF 40 at 2). Plaintiff concedes this sudden increase "correlates directly" with the "expanded advertising activities" for one period of six weeks (ECF No. 40 at 3). But Plaintiff fails to show how this harm will continue now that this period has passed. Because the harm Plaintiff alleges was caused by Defendants activities during a discreet period of time in the past, the Court can only conclude that the harm caused could be compensated with money damages after the fact.

Furthermore, in relation to the "success on the merits" prong of a preliminary injunction showing, Plaintiff cites to *Cent. Bancorp, Inc.* and *Heartland Animal Clinic, P.A.* to support its claim that 218 instances of actual confusion demonstrate a likelihood of success on the merits for a Lanham Act violation. *See Cent. Bancorp, Inc. v. Cent. Bancompany, Inc.*, 385 F. Supp. 3d at 1142; *Heartland SPCA Animal Med. Clinic, LLC*, 861 F. Supp. 2d 1293, 1303 (D. Kan.), *aff'd sub nom. Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Med. Ctr., LLC*, 503 F. App'x 616 (10th Cir. 2012). It is true that the court in *Cent Bancorp, Inc.* granted a motion for preliminary injunction where plaintiff showed eight instances of actual confusion in an underlying Lanham Act allegation. However, the Court further explained in *Cent Bancorp, Inc.* that "for a relatively small operation. . . [in the] local community. . . [a] small amount of confusion has greater significance. In contrast, Plaintiff here operates with a multi-billion-dollar budget and does not operate only locally.

6

Similarly in *Heartland Animal Clinic, P.A.* plaintiff offered evidence of dozens of instances of confusion in favor of a preliminary injunction. The court was persuaded by this evidence because the defendant supplied no evidence relating to the sophistication of animal care consumers in the relevant market. Here, Plaintiff operates in the financial services industry. Consumers exercise a high degree of care in selecting their financial service – making confusion unlikely. *Elevate Fed. Credit Union v. Elevations Credit Union*, No. 120CV00028DAKJCB, 2022 WL 798901, at *22 (D. Utah Mar. 16, 2022), *aff'd,* 67 F.4th 1058 (10th Cir. 2023) (citations omitted).

Accordingly, the Court finds that Plaintiff has not demonstrated that the issue of a preliminary injunction is warranted. Because a preliminary injunction "can issue only if each [preliminary injunction] factor is established," and Plaintiff has not met its burden on the "will suffer irreparable injury if the injunction is denied" or "likelihood of success" factors, the Court need not determine whether it has met its burden for the remaining preliminary injunction factors. *See Denver Homeless*, 32 F.4th at 1277 (citation omitted).

## IV. CONCLUSION

Consistent with the above analysis, Plaintiff's Motion for Preliminary Injunction (ECF No. 40) is DENIED.

DATED this 12th day of September 2023.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge